IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

CHRISTIE D. HARRELL, *et al.*,          )
                                        )
      Plaintiffs,                      )
                                        )
      v.                               )          Civil Action No. 3:12CV831-HEH
                                        )
COLONIAL HOLDINGS, INC., *et al.*,      )
                                        )
      Defendants.                      )

## MEMORANDUM OPINION
### (Motions to Dismiss)

This case involves a dispute over the rights to the service mark for "Strawberry Hill Races," a century-old steeplechase horse racing tradition in Richmond, Virginia. In early 2012, Defendants were spearheading arrangements to hold the event at Colonial Downs racetrack later that summer. Shortly before the race was held, Plaintiffs purchased the federally-registered mark at bankruptcy auction and immediately dispatched a cease and desist letter to Defendants—even before title to the trademark was officially transferred. Defendants held the race as scheduled anyway, despite Plaintiffs' warning. This lawsuit ensued, with Plaintiffs filing claims for trademark infringement and false advertising. Defendants have counterclaimed, asserting claims for defamation, breach of contract, and a variety of business torts. The parties now move to dismiss each other's claims.

# I. BACKGROUND[1]

Strawberry Hill Races are an annual tradition dating back to 1895. Between 1973 and 2012, the State Fair of Virginia, Inc. ("SFVA") operated the event under the federally-registered service mark[2] "Strawberry Hill Races" (the "Mark"). (Compl. at ¶ 23.) Since 2000, SFVA has hosted the event at Colonial Downs racetrack in New Kent, Virginia, which is operated by Colonial Downs, L.P. ("Colonial Downs"). (*Id.*; Countercl. at ¶ 11.) Colonial Downs operates the racetrack in conjunction with its affiliated entities: Colonial Holdings, Inc. ("Colonial Holdings"), Colonial Downs, LLC, and Stansley Racing Corp. ("Stansley").[3] (Compl. at ¶ 8; Countercl. at ¶ 17.) Ian Stewart ("Stewart") serves as president of Stansley, Colonial Holdings, and Colonial Downs, LLC, giving him essentially complete control over Colonial Downs. (Compl. at ¶ 9.)

After SFVA filed for Chapter 11 bankruptcy protection in December 2011, the future of Strawberry Hill races appeared uncertain. (*Id.* at ¶ 25.) During the bankruptcy,

---

[1] As required when resolving a motion made pursuant to Fed. R. Civ. P. 12(b)(6), the Court assumes that all allegations are true, viewing the facts in the light most favorable to the pleading party. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). To the extent that any disagreement exists between the Complaint and the Counterclaim, the disagreement will be noted and the corresponding motion to dismiss will be analyzed according to the construction that favors the non-moving party. The Court summarizes the facts in accordance with these standards.

[2] The "Strawberry Hill Races" mark is registered as a "service mark," though the pleadings and briefs frequently refer to it as a "trademark." (Compl. at ¶¶ 24, 60, 82.) The distinction is of no consequence, however, because the analysis of trademark infringement is the same as that of service mark infringement. *Dan Tana v. Dantanna's*, 611 F.3d 767, 773 n.3 (11th Cir. 2010); *see also Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 166 n.2 (4th Cir. 2007) (using the terms "service mark" and "trademark" interchangeably). In its analysis, the Court uses the terms interchangeably.

[3] Collectively, the Colonial Downs entities are the Defendants in this case.

SFVA negotiated an agreement with Colonial Holdings, in which they would partner to hold the races at Colonial Downs on June 2, 2012. (*Id.* at ¶ 26.) Unfortunately, in March 2012, SFVA's failure to produce a viable financing plan led to the conversion of its bankruptcy to Chapter 7 liquidation. (*Id.* at ¶ 27.)

Immediately thereafter, the bankruptcy trustee informed Colonial Holdings that its agreement to hold the 2012 Strawberry Hill Races in partnership with SFVA was rejected—Defendants characterize this as a breach of contract by SFVA.[4] (*Id.* at ¶ 28; Countercl. at ¶ 20.) The trustee also informed Colonial Holdings that, to proceed with the event under the name "Strawberry Hill Races," it needed to obtain a temporary license to use the Mark. (Compl. at ¶ 28.) In contrast, Defendants take the position that any transfer of the Mark was subject to the license that they had acquired from SFVA. (Countercl. at ¶ 25-27.) Negotiations between the bankruptcy trustee and Colonial Holdings failed to resolve the disagreement. (Compl. at ¶ 29, Ex. C.)

---

[4] Neither party addresses the effect of the trustee's rejection of the agreement between SFVA and Defendants. The Court notes that it remains an unsettled issue whether Defendants could treat the trustee's rejection as a breach of contract for which only damages are available. *Lubrizol v. Richmond Metal Finishers*, 756 F.2d 1043, 1045 (4th Cir. 1985), *superseded by statute in part*, Pub. L. 100-506, sec. 1(b) (codified as amended at 11 U.S.C. § 365(n)). Under *Lubrizol*, Defendants would have lost their right to use the Mark upon rejection, and their only remedy would be to seek money damages. *Id.* Alternatively, some courts have recognized the possibility that a trademark licensee may retain the right to use a trademark after a licensing agreement is rejected. *See, e.g., Sunbeam Products, Inc. v. Chicago Am. Mfg., LLC*, 686 F.3d 372, 377 (7th Cir. 2012) (rejecting the analysis of *Lubrizol* and noting that a breach by the debtor does not necessarily extinguish the non-debtor's right to use the mark). Although neither approach necessarily impacts the analysis of the motion to dismiss, the Court remains cognizant of the role that the Bankruptcy Code might play in ultimately determining the effect of the trustee's action.

At a bankruptcy auction held on May 24, 2012, Plaintiffs Christie Harrell and Mildred Dotson ("Plaintiffs") purchased the "Strawberry Hill Races" Mark and internet domain name. (*Id.* at ¶ 31.) Nearly one week later, on May 30, 2012, Plaintiffs sent a "cease and desist" letter to Stewart, addressed to him in his capacity as President of Stansley and Colonial Downs. In the letter, Plaintiffs take the position that "Colonial Downs' sponsorship of the Strawberry Hill Races" would be "illegal and without the authority of the owner of the trade name." (*Id.* at ¶ 35, Ex. F.) The bill of sale transferring the Mark is dated June 1, 2012, but the letter transmitting the bill of sale is dated June 4, 2012. (*Id.* Ex. D.) Offering different conclusions from these dates, Plaintiffs assert that ownership of the Mark transferred *before* the race, while Defendants claim that ownership did not transfer until *after* the race. (Compl. Ex. D; Countercl. at ¶ 24.)

Despite Plaintiffs' warnings, Defendants proceeded with the event as scheduled. (*Id.* at ¶ 39.) Each of the Defendant entities "worked collaboratively" in promoting, organizing, and conducting the event. (*Id.*) However, the parties disagree over the extent to which the Mark was associated with the event. According to Plaintiffs, Defendants promoted the event as the first Strawberry Hill Races to be operated exclusively by them. (*Id.* at ¶¶ 37-38.) But according to Defendants, they worked in good faith to strip the event of any reference to Strawberry Hill Races once the dispute arose. (Countercl. at ¶ 34.) Notably, on the same day as the event, a Richmond newspaper reported that Colonial Downs had acquired sole ownership of the Strawberry Hill Races. (Compl. at ¶ 37, Ex. G.)

4

Tensions between Plaintiffs and Defendants have only deepened since the June 2, 2012 steeplechase races.  Plaintiffs accuse Defendants of falsely representing to the horseracing industry that they are now the legitimate owners of Strawberry Hill Races. (*Id.* at ¶ 45.)  In that vein, Defendants have held a contest inviting the public to re-name the event formerly known as Strawberry Hill Races.  (*Id.* at ¶¶ 47-48, Ex. K.)  In response, on October 16, 2012, Plaintiffs sent a demand letter to Colonial Downs and Stansley accusing them of trademark infringement and other wrongs—including failure to pay vendors for services rendered at the June 2nd race.  (Countercl. at ¶ 35.)  By carbon-copy, Plaintiffs publicized the letter to the National Steeplechase Association and the Virginia Racing Commission.  (*Id.*)

Due to these events, Plaintiffs brought this action against Defendants asserting Lanham Act claims for trademark infringement, false designation, and false advertising, as well as a common law claim of trademark infringement and unfair competition. Defendants take umbrage with Plaintiffs' indiscriminate pleading against all Colonial Downs entities as "Defendants," moving to dismiss on the basis that such pleading is improper.  Defendants also assert Counterclaims for declaratory judgment of non-infringement, tortious interference with a contract, defamation, statutory business conspiracy in violation of Va. Code § 18.2-499, common law conspiracy, unjust enrichment, and breach of contract.  With the exception of the declaratory judgment count, Plaintiffs move to dismiss all counterclaims.  Both Motions have been thoroughly

briefed and the Court dispenses with oral argument, finding that it would not materially

aid in the decisional process.  For the reasons that follow, both Motions will be denied.[5]

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

(4th Cir. 1992) (citation omitted).  The Federal Rules of Civil Procedure "require[] only

'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not assert "detailed factual

allegations," but must contain "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations

omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above

the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at

570, rather than merely "conceivable." *Id.*  In considering such a motion, a plaintiff's

well-pleaded allegations are taken as true and the complaint is viewed in the light most

favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted).  Legal

conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[5] Although not all counterclaims are asserted by all Defendants, the analysis is unaffected by any distinction as to which entities assert which claims.  Thus, for simplicity, the Court addresses the counterclaims as if asserted by all Defendants jointly.

### III. DISCUSSION

The parties challenge each other's claims according to different lines of reasoning. Defendants make a singular argument that all claims against them must fail because Plaintiffs indiscriminately plead claims against all "Defendants" without compartmentalizing the conduct of each. Plaintiffs, on the other hand, articulate a particularized challenge addressing all but one of Defendants' counterclaims. Neither approach yields dispositive relief at this juncture of the litigation.

**A.    Defendants' Motion to Dismiss**

Defendants distill their entire motion to dismiss to a single issue: Plaintiffs' indiscriminate allegations against the "Defendants" generally. This Court addressed the exact same argument recently, concluding that there exists no "bright-line prohibition" on such pleading. *Alliance Tech. Group, LLC v. Achieve 1, LLC*, No. 3:12cv701, 2013 U.S. Dist. LEXIS 4708, at *11 (E.D. Va. Jan. 11, 2013). At the same time, this Court acknowledged that "courts have at times struggled with allegations drafted in this manner," requiring a reviewing court to "parse each claim to determine whether the undifferentiated allegations, if true, plausibly state a claim." *Id.* (citations omitted).

To state a claim for trademark infringement under 15 U.S.C. § 1114(1)(a), a plaintiff must allege that: (1) it possesses the mark; (2) the defendant used the mark in commerce and without the plaintiff's authorization; (3) such use was in connection with the sale, offering for sale, distribution or advertising of goods and services; and (4) that defendant's use is likely to confuse consumers. *Rosetta Stone, Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (citations omitted). Likewise, to allege an unfair

competition claim under Section 43(a) of the Lanham Act, a plaintiff must demonstrate that it has a valid trademark and that the defendant's use of a colorable imitation is likely to cause confusion among customers. *Ray Communs., Inc. v. Clear Channel Communs., Inc.*, 673 F.3d 294, 300 (4th Cir. 2012) (citations omitted). The test for a common law unfair competition claim in Virginia is "essentially the same" as both the federal trademark infringement and unfair competition claims, "because both address the likelihood of confusion as to the source of the goods or services involved." *Lamparello v. Falwell*, 420 F.3d 309, 312 (4th Cir. 2005) (citation and internal quotation marks omitted).[6] For each of these claims, a plaintiff may assert joint liability where it is shown that "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Rosetta Stone*, 676 F.3d at 165 (citation and internal quotation marks omitted).

In this case, such indiscriminate pleading against the "Defendants" poses no difficulty. Each Defendant is affiliated with the others and appears to play a role in the operation of the Colonial Downs racetrack. (Compl. at ¶¶ 8, 39.) Defendants have admitted as much in their own Counterclaim, alleging that it had acquired a license to use the Mark by "Colonial Holdings *and its affiliates*, including Colonial Downs."

---

[6] In addition to their federal claims, both parties assert claims based on Virginia law. As a federal court sitting in Virginia and exercising pendent jurisdiction over state claims, the Court applies Virginia's choice of law rules. *Felder v. Casey*, 487 U.S. 131, 151 (1988) (citation omitted). Because the contract at issue appears to have been executed in Virginia, and because all allegations of tortious conduct and injury occurred in Virginia, Virginia law governs all state claims. *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006).

(Countercl. at ¶ 17.)[7] Colonial Holdings, Colonial Downs, LLC, and Stansley Racing

Corporation all share the same address on Colonial Downs Parkway in New Kent,

Virginia. (Compl. at ¶¶ 4-5, 7.) Colonial Holdings is a member of Colonial Downs,

LLC; Stansley is a wholly-owned subsidiary of Colonial Holdings; Colonial Holdings is

99% partner of Colonial Downs, L.P.; and, Stansley is the general partner of Colonial

Downs, L.P. (*Id.* at ¶ 8.) At a minimum, it is reasonable to infer that all entities jointly

controlled the allegedly infringing steeplechase races held in June of 2012, so joint

liability is sufficiently alleged.[8]

Alternatively, Plaintiffs have sufficiently alleged that each of the Defendants

possess the authority to bind the others in transactions with third parties—thereby

satisfying another permissible route to joint liability. *Rosetta Stone*, 676 F.3d at 165

(citation and internal quotation marks omitted). Stewart appears to exercise control over

all entities as the president of Stansley, Colonial Holdings, and Colonial Downs, LLC.

(*Id.* at ¶ 9.) Because Colonial Holdings owns a 99% interest in Colonial Downs, L.P., it

---

[7] It is somewhat disingenuous for Defendants to challenge as implausible the allegation that they *jointly* infringed the Mark, while simultaneously alleging that they *jointly* held license to use the Mark.

[8] To establish the affiliation of the entities, Plaintiffs invite the Court to take judicial notice of certain documents filed with the Securities and Exchange Commission by the Defendants. The Court declines the request at this time, finding it unnecessary to resolve the Motion to Dismiss. *See, e.g., Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (a court is permitted—but not required—to consider certain extraneous material when resolving motion to dismiss). Plaintiffs have adequately pleaded the corporate affiliation of Defendants, and no more is needed to survive a motion to dismiss.

is reasonable to infer—though not certain—that Stewart has complete control to bind any one entity on behalf of the others.[9]

Likewise, the alternative argument seeking dismissal of Colonial Downs, LLC must be rejected, because this entity is included in the definition of "Defendants" set forth in the Complaint. (*Id.* at ¶ 10.) As such, the allegations of joint infringement incorporate all four Colonial Downs entities, including Colonial Downs, LLC.

For these reasons, the Court rejects the notion that Plaintiffs' pleading against "Defendants" indiscriminately is *per se* improper. Thus, Defendants' Motion to Dismiss will be denied.

## B.   Plaintiffs' Motion to Dismiss Counterclaim[10]

Plaintiffs challenge each counterclaim except for the declaratory judgment claim set forth at Count I. In each instance, they argue that the claims against them are legally deficient based on Defendants' purported failure to allege sufficient facts in light of the elements of each claim. However, construing the Counterclaim in the light most

---

[9] In their Reply to Plaintiff's Opposition to Motion to Dismiss, Defendants argue that Plaintiffs' claims should be dismissed because they fail to allege a claim to pierce the corporate veil. (Def.'s Reply Pl.'s Opp'n at 5-6, ECF No. 15.) That argument has no bearing on the issue, because Plaintiffs have raised no claim to pierce the corporate veil. Instead, their claim is based on a theory of joint liability—a distinct and legally viable concept. *See Rosetta Stone*, 676 F.3d at 165 (citation and internal quotation marks omitted) (recognizing vicarious liability for trademark infringement claims).

[10] Plaintiffs also append a request for judicial notice and certain documents referenced in the pleadings to their Motion to Dismiss. Because these documents do not change the analysis, the Court will not take judicial notice of them at this time. *Phillips*, 190 F.3d at 618 (recognizing permissibility of considering certain documents when resolving motion to dismiss).

favorable to Defendants—as this Court is required to do—each claim survives scrutiny under Rule 12(b)(6).

### 1.    Tortious Interference with Existing Contracts

In Count II of their Counterclaim, Defendants allege that Plaintiffs intentionally interfered with the contract that they had with SFVA to host the 2012 Strawberry Hill Races at Colonial Downs racetrack.  Plaintiffs attack the claim on four fronts.  First, they argue that the pleading fails to identify any specific contract between SFVA and Defendants.  Second, they argue that no allegation establishes Plaintiffs' knowledge that such a contract existed.  Third, Plaintiffs argue that no actual disruption of any contractual relationship has been alleged.  Lastly, they argue that the Counterclaim fails to demonstrate any intent to disrupt any relationship, even assuming such a disruption occurred.  Each argument fails.

To state their counterclaim for tortious interference with a contract, Defendants must allege: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the alleged tortfeasor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damages. *Preferred Sys. Solns., Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 687-88 (Va. 2012) (citing *Maximus v. Lockheed Info. Mgmt. Sys. Co.*, 493 S.E.2d 375, 378 (Va. 1997); *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987)). Because the Counterclaim does not specify whether the contract was terminable at will, and since neither party has raised the issue, the Court assumes that the added element of

"improper methods" is not required in this case. *Cha v. Korean Presbyterian Church*, 553 S.E.2d 511, 515 (Va. 2001) (citation and internal quotation marks omitted).

Defendants adequately state a claim for tortious interference with an existing contract. They identify a specific agreement reached with SFVA on January 20, 3012, in which they agreed to partner together to conduct the Strawberry Hill Races. (Countercl. at ¶ 14.) Plaintiffs' knowledge of that agreement was established by the May 31, 2012 letter in which Defendants specifically informed them of the agreement with SFVA. (*Id.* at ¶ 32.) With that knowledge in hand on the eve of the event, Plaintiffs forced Defendants to strip the June 2, 2012 steeplechase races of any reference to "Strawberry Hill Races." (*Id.* at ¶ 33.) Viewed in the light most favorable to the Defendant, it can be inferred that Defendants lost the value of their bargain—use of the "Strawberry Hill Races" trademark—due to Plaintiffs' actions. Plaintiffs' intent can be inferred from the timing of its letters.

Though it remains unclear whether Defendants can ultimately prove such a claim, at this stage of the proceedings they have sufficiently alleged tortious interference with an existing contract. Accordingly, Plaintiffs' Motion to Dismiss will be denied as to Count II.

### 2.     Defamation

Defendants' defamation claim is based on the October 16, 2012 letter in which Plaintiffs accused Defendants of "illegal behavior" in hosting the June 2012 steeplechase races, including the failure to pay vendors for services rendered. (Countercl. at ¶¶ 35, 57.) By carbon copy, that letter was also transmitted to the National Steeplechase

Association and the Virginia Racing Commission. (*Id.* at ¶ 65.) According to Plaintiffs, the allegedly defamatory statements are absolutely privileged settlement communications, for which no defamation may lie. Moreover, they argue that the allegedly defamatory aspects of those statements are pure opinion, thereby rendering them non-actionable.

To state their defamation counterclaim, Defendants must allege that Plaintiffs (1) published (2) an actionable statement with (3) the requisite intent. *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005) (citation omitted). Statements of opinion are generally not actionable, because such statements cannot be objectively characterized as true or false. *Id.* (citation omitted). Whether a statement is one of fact or opinion is to be made by the court as a matter of law. *Id.* (citations omitted).

Additionally, pre-litigation settlement communications enjoy absolute privilege from defamation claims, as long as the communication is made only to "interested persons." *Mansfield v. Bernabei*, 727 S.E.2d 69, 75 (Va. 2012) (adopting Restatement (Second) of Torts §§ 586, 587). Any such statement that enjoys absolute privilege is not an "actionable statement" for defamation purposes. *Id.*

Though the Supreme Court of Virginia has not yet defined the term "interested person" in this context, the nature of settlement discussions is such that it could only refer to those whose rights may be affected by the litigation. *Cf. Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of Supervisors*, __ S.E.2d __, 2013 Va. LEXIS 5, at *11 (Va. January 10, 2013) (defining "justiciable interest" as "an actual controversy between the plaintiff and the defendant, such that [the plaintiff's] rights will

13

be affected by the outcome of the case"); *Fowler v. Winchester Med. Ctr., Inc.*, 580

S.E.2d 816, 818 (Va. 2003) (quoting *McDaniel v. North Carolina Pulp Co.*, 95 S.E.2d

201 (Va. 1956)) (discussing "real party in interest" doctrine by reference to the party with

authority to settle a claim). In other words, the term does not implicate communications

with bystanders whose interests are those of spectators to the lawsuit, but only those with

a justiciable interest in the litigation. If "interested person" was as broadly defined as

Plaintiffs propose, then a litigant could defame the opposition with impunity simply by

carbon copying a news reporter interested in writing a story about the case. Such an

absurd result would negate the purposes of common law defamation and the standards

governing the attendant immunities.

Based on the pleadings, there is no indication that the rights of the National

Steeplechase Association or the Virginia Racing Commission will be in any way affected

by the outcome of this litigation. Likewise, there was no reason for either of those

apparently disinterested parties to have expected their rights to be affected by any

settlement, as contemplated by the October 16, 2012 missive. Especially where the Court

is required to construe the allegations in the light most favorable to the alleging party, the

allegations in the Counterclaim support an inference that both the National Steeplechase

Association and the Virginia Racing Commission are disinterested third parties.

Accordingly, the motion to dismiss the defamation claim based on absolute privilege will

be denied.[11]

---

[11] Plaintiffs' reliance on *Jones v. Coward*, 666 S.E.2d 877 (N.C. App. 2008), is misplaced. First, as both parties acknowledge, that decision was authored by a North

The Court also rejects the characterization of the allegedly defamatory statements as purely opinion. It is an objectively provable (or disprovable) statement that Defendants failed to pay vendors—that statement is clearly actionable. *Jordan*, 612 S.E.2d at 206. Under Virginia law, such statements arguably constitute defamation *per se*, because they would prejudice Defendants profession or trade. *Tronfeld v. Nationwide Mut. Ins. Co.,* 636 S.E.2d 447, 449-50 (Va. 2006). Indeed, Plaintiffs have offered no argument to the contrary, focusing instead on the "legal opinion" contained in the letter, claiming that Defendants "engaged in illegal or unlawful activity." (Pl.'s Mem. Supp. Mot. Dismiss Countercls. At 7.)

Allegations of "illegal" conduct are also clearly actionable, because an accusation that a person's conduct is "illegal" is objectively provable. Couching such an unequivocal statement as "legal opinion" does not change the analysis. The Court simply applies the rule articulated by the Supreme Court of Virginia, that an objectively provable or disprovable statement is actionable. *Jordan*, 612, S.E.2d at 206. Ultimately, it will be

---

Carolina court interpreting North Carolina law. Virginia law applies here. But even if the Court accepted the persuasive rationale in *Jones*, that decision would still have no bearing here. In that case, a lawyer was sued for allegedly making defamatory comments about a litigant's drug use to a witness—apparently to determine the extent of the witness's knowledge about such drug use. Because the lawyer's comments were part of a pre-trial investigative interview in an ongoing suit, it was "not 'so palpably irrelevant to the subject matter of the controversy that it may [have] become the subject of inquiry.'" *Id.* at 235. Even assuming that the third parties that received the October 16, 2012 letter are potential witnesses, they were not carbon copied as part of any inquiry here. Though the contents of the letter may be relevant to this lawsuit, there does not appear to have been any legitimate reason to communicate settlement efforts to third parties in this case.

proven or disproven whether Defendants engaged in the conduct at issue and whether such conduct is, in fact, illegal.[12]

For these reasons, Defendant have adequately pleaded a counterclaim for defamation. Plaintiffs Motion to Dismiss this counterclaim will be denied.

### 3.     Statutory Conspiracy and Common Law Conspiracy

Plaintiffs raise three arguments in support of dismissing both the statutory and common law conspiracy claims. First, they argue that no underlying tort has been alleged, assuming that the Court dismisses both the tortious interference and defamation claims. This argument is summarily rejected, as the Court has already found those claims to be sufficient. Next, Plaintiffs argue that they cannot conspire with one another when acting as partners in a general partnership. Finally, asserting that the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to conspiracy claims, they challenge whether Defendants have sufficiently alleged the time, place, and manner of any conspiracy.

Pursuant to Va. Code § 18.2-499, a business conspiracy arises when two or more persons "combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatsoever." *See, e.g., N. Va. Real Estate, Inc. v. Martins*, 720

---

[12] It is also worth noting that Virginia recognizes the rule that defamation *per se* includes any statement imputing the commission of a crime involving moral turpitude for which the target of the statement may be convicted. *Tronfeld*, 636 S.E.2d at 449-50. While the parties have not briefed this particular issue, and although allegations of "illegal" conduct do not necessarily rise to the level of an accusation that one has committed a crime involving moral turpitude, the two are sufficiently analogous to draw one conclusion—allegations of "illegal" conduct are not opinions. There is a difference between offering a legal opinion, which is usually framed as an educated assessment, and unequivocally accusing another of "illegal" activities.

S.E.2d 121, 133 (Va. 2012). As a distinct cause of action, a common law civil conspiracy is "(1) a combination of two or more persons, (2) by some concerted action, (3) to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985). The "unlawful act" element requires that at least one member of the conspiracy commit an "underlying tort." *Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007). This can include the inducement of a breach of contract or defamation, as alleged in this case. *Catercorp, Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277, 281 (Va. 1993).

This lawsuit was initiated by Christie Harrell and Mildred Dotson as individuals. However, Plaintiffs now argue that they were acting as a general partnership and, as such, cannot be liable for conspiracy. *See Saliba v. Exxon Corp.*, 865 F. Supp. 306, 313 (W.D. Va. 1994) ("[W]here the alleged co-conspirators are the two general partners in a partnership, acting within the scope of partnership affairs, only one entity exists—the Partnership."). To the contrary, Paragraphs 1 and 2 identify Harrell and Dotson as individuals, making no reference to any general partnership. Based solely on a lone allegation that Plaintiffs were motivated to "give *themselves* and their partnership . . . a competitive advantage," Plaintiffs assert that no conspiracy could exist. (Countercl. at ¶ 70 (emphasis added).) Alone, this allegation establishes neither that the conspiracy claims are asserted against a general partnership or that Plaintiffs were acting in the scope of the partnership when committing any alleged tort. The allegation could be construed to allege a conspiracy by the individuals to give the partnership that they operate an

17

advantage, and not necessarily a conspiracy by the partnership itself. At this stage of the litigation, the Court must accept the construction that favors Defendants' Counterclaim. *T.G. Slater*, 385 F.3d at 841.

Plaintiffs also move to dismiss the conspiracy claims based on Defendants' failure to satisfy the strictures of Fed. R. Civ. P. 9(b). Some courts have held that "business conspiracy, like fraud, must be pleaded with particularity." *Gov't Emples. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004). As those courts have found, the "heightened pleading standard prevents every business dispute over unfair competition becoming a business conspiracy claim." *Id.* However, it is not necessarily the case that all conspiracies must satisfy Rule 9's particularity requirement. One recent unpublished Fourth Circuit decision suggests that there is a distinction between conspiracy claims at large and conspiracies to commit fraud—the latter of which must satisfy Rule 9. *See Terry v. SunTrust Banks, Inc.*, No. 11-1704, 2012 U.S. App. LEXIS 13632, at *35 (4th Cir. July 2, 2012) (requiring conspiracy claim that alleges fraud to satisfy Rule 9). Here, the Court has reviewed both the common law conspiracy and statutory conspiracy counts and concludes that they are not based on a conspiracy to commit fraud, but instead on a conspiracy to tortiously interfere with a contract and to defame Defendants. Thus, the conspiracy counts in this case need not be held to the heightened requirements of Rule 9(b).

Even if the heightened standards of Rule 9(b) applied, the Court would find the allegations here to be sufficient. Construed in Defendants' favor, the Counterclaim alleges that Plaintiffs purchased the Strawberry Hill Races Mark on May 24, 2012, and

within one week formed an agreement to tortiously injure Defendants. (Countercl. at ¶¶ 28-31, 69-70, 75-76.) By agreement, they directed their lawyer to send the first of two threatening letters on May 30, 2012, allegedly interfering with contractual rights established between Defendants and SFVA. (*Id.* at ¶¶ 28-31.) Then, well after the steeplechase races were held at Colonial Downs, they again directed their lawyer to send a letter, this time allegedly defaming Defendants in the eyes of the National Steeplechase Association and the Virginia Racing Commission. (*Id.* at ¶¶ 35-36.) These details are sufficient to provide the time, place, and manner of the conspiracy, as would be required if Rule 9(b) applied to the conspiracy claims.

Construed in Defendants' favor, the allegations of conspiracy are sufficient to survive scrutiny under Rule 12(b)(6). Accordingly, the Court will deny Plaintiffs Motion to Dismiss counterclaims asserting statutory conspiracy and common law conspiracy.

### 4.    Unjust Enrichment and Breach of Contract

Defendants assert claims for unjust enrichment and breach of contract in Counts VI and VII. Their breach of contract claim is based on a theory that Plaintiffs are the successor-in-interest to the agreement reached with SFVA to hold the 2012 Strawberry Hill Races. (Countercl. at ¶¶ 87-90.) Alternatively, they assert an unjust enrichment claim based on additional goodwill associated with the Strawberry Hill Races Mark as a result of hosting the 2012 races. (*Id.* at ¶¶ 80-82.) As their theory goes, Defendants saved and enhanced the goodwill associated with the Mark by preventing a one-year hiatus of the annual steeplechase racing tradition. (*Id.* at ¶ 80.)

Plaintiffs move to dismiss both claims based on the rule that one cannot simultaneously obtain relief for unjust enrichment and breach of contract. Additionally, they seek dismissal of the unjust enrichment claim, arguing that the Counterclaim is devoid of allegations showing that Plaintiffs knew about the 2012 Strawberry Hill Races ahead of time or accepted any benefit therefrom. (Pl.'s Mem. Supp. Mot. Dismiss Countercls. at 14-15.) They also move to dismiss the breach of contract claim based on the lack of privity between Plaintiffs and SFVA. (*Id.* at 16-17.) Each argument fails, as Defendants have adequately pleaded the claims in the alternative.

In the heading that identifies Count VII, Defendants specifically note that the breach of contract claim is brought "IN THE ALTERNATIVE." (Countercl. at ¶¶ 85-86.) Correctly, Plaintiffs argue that Defendants cannot simultaneously *recover* in contract and equity. *See Southern Biscuit Co. v. Lloyd*, 6 S.E.2d 601, 606 (Va. 1940). But, this does not mean that they cannot *plead* in the alternative. Fed. R. Civ. P. 8(d)(2) specifically permits alternative theories of recovery, regardless of whether "in a single count . . . or in separate ones." *See also Mendoza v. Cederquist*, No. 1:09cv163, 2009 U.S. Dist. LEXIS 38264, at *8 (E.D. Va. May 6, 2009) (citations omitted); *see also Ford v. Torres*, No. 1:08cv1153, 2009 U.S. Dist. LEXIS 57245, at *11 (E.D. Va. Mar. 3, 2009) (citations omitted). Although Defendants cannot recover for breach of contract and unjust enrichment, they are allowed to plead these inconsistent theories.

Defendants have sufficiently alleged facts which, if true, would support their unjust enrichment claim. To state an unjust enrichment claim under Virginia law, one must allege: (1) a benefit conferred; (2) knowledge that the benefit was conferred; and,

(3) acceptance or retention of the benefit in circumstances that would make it inequitable to keep the benefit without paying for it. *Centex Constr. v. ACSTAR Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006); *Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990) (citations omitted).

By their attorney's own letter dated May 30, 2012, Plaintiffs have shown that they knew about the forthcoming June 2, 2012 Strawberry Hill Races to be held at Colonial Downs racetrack. (Countercl. at ¶ 28.) And while the parties dispute whether holding that race added to or diminished the goodwill associated with the mark, it can be inferred from the Counterclaim that it benefited the Mark by avoiding a break in the annual tradition. Indeed, Plaintiffs' knowledge of this benefit may be found in their May 30, 2012 letter, in which they indicated that they would not enjoin the races "for the good of the racing public." (Countercl. Ex. B.) Because Defendants have sufficiently alleged unjust enrichment, the Court will deny Plaintiffs' Motion to Dismiss this claim.

Lastly, the Court will deny Plaintiffs Motion to Dismiss the breach of contract counterclaim. Defendants' theory is that it had obtained a contractual license to use the Mark from SFVA, and that Plaintiffs were successors-in-interest to SFVA's obligation. (Countercl. at ¶¶ 88-90.) Plaintiffs argue that this claim cannot lie because SFVA and Plaintiffs are not in privity with one another, such that they were not bound by the agreement between SFVA and Defendants. Plaintiffs also argue that they purchased the Mark "free of any conflicting interests." (Pl.'s Mem. Supp. Mot. Dismiss at 18 (citing Compl. Ex. D).) Neither argument is persuasive.

21

As Defendants aptly note, Plaintiffs' own Complaint asserts that they "stepped into the shoes of SFVA." (Compl. at ¶ 32.) At least for purposes of addressing the present motion, Defendants' incorporation of this allegation is sufficient to establish privity. "It is generally held that 'privy' means a mutual or successive relationship to the same rights of property." *Kesler v. Fentress*, 286 S.E.2d 156, 159 (Va. 1982); *see also Nero v. Ferris*, 284 S.E.2d 828, 831 (Va. 1981) ("While privity generally involves a party so identical in interest with another that he represents the same legal right, a determination of just who are privies requires a careful examination into the circumstances of each case."). Because Plaintiffs themselves take the position that they succeed to all rights to the Mark previously held by SFVA, it may be reasonably inferred that they are in privity with one another. Although additional context may ultimately prove otherwise after further discovery, Plaintiffs offer absolutely no authority in support of dismissal on the privity issue at this early stage of the litigation.

Plaintiffs also argue that they acquired title to the Mark "free and clear" of any license previously acquired by Defendants. The Bill of Sale conveying title to the Mark states that "Seller *warrants* that it can convey the Property to [Plaintiffs] free of any conflicting interests." (Compl. Ex. D (emphasis added).)However, the very next sentence indicates that "[t]he property is sold 'AS IS,' 'WHERE IS,' 'WITH ALL FAULTS,' and 'WITHOUT ANY WARRANTIES WHATSOEVER, EXPRESSED OR IMPLIED, INCLUDING, WITHOUT LIMITATION, A WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR OR OTHER PURPOSE.'" (*Id.*) Reading these two sentences together, the Bill of Sale broadly disclaims all warranties with a

22

single exception—the seller warranted that it was capable of conveying title free of any "conflicting interests." (*Id.*)

The language in the Bill of Sale does not control the analysis of Defendants' breach of contract claim.  A seller does not foreclose all claims by third parties simply by providing a warranty of title—instead, he accepts liability for breach of warranty if a third party later claims title.  The Court is aware of no authority—and Plaintiffs cite to none—holding that a warranty of title *forecloses* the rights of third parties.  Thus, the Defendants plausibly allege that Plaintiffs acquired the Mark subject to the limited license acquired from SFVA.[13]

For these reasons, Plaintiffs' Motion to Dismiss counterclaims for unjust enrichment and breach of contract will be denied.

## IV.  CONCLUSION

In sum, the Court finds that both Plaintiffs and Defendants have sufficiently alleged their respective claims.  Accordingly, both Motions to Dismiss will be DENIED.

An appropriate Order will accompany this Memorandum Opinion.

/s/
_____
Henry E. Hudson
United States District Judge

Date: Feb. 12, 2013
Richmond, Virginia

---

[13] Even so, it is not clear that Defendants' limited license to use the Strawberry Hill Races Mark in conjunction with its steeplechase races would constitute a "conflicting interest" as that term is used in the Bill of Sale.